AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
## for the
### District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
FEB 08 2018
MATTHEW J. DYKMAN
CLERK

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>All Funds Contained in US Bank Account Number 1 564 0045 5234 Held in the Name Pueblo of Pojoaque Gaming Funds | ) ) ) ) ) Case No.<br>18mr103 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of ___New Mexico___ is subject to forfeiture to the United States of America under ___18___ U.S.C. § ___1955(d)___ *(describe the property)*:

all funds contained in US Bank Account Number 1 564 0045 5234 held in the name of Pueblo of Pojoaque Gaming Funds.

The application is based on these facts:

Based on the facts set forth herein, I believe there is probable cause to seize all funds in the account identified. These funds, as outlined in the attached affidavit, were used in violation of, and constituted or were derived from proceeds of, illegal gambling in violation of Title 18 U.S.C. § 1955, and are accordingly subject to seizure under Title 18 U.S.C. §§ 1955(d) and 981(b)(1) and civil forfeiture under Title 18 U.S.C. §§ 1955(d), 981(a)(1)(C), 1956(c)(7)(A) and 1961(1).

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Special Agent Michael Marycz, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/8/2018

City and state: Albuquerque, NM

_____
*Judge's signature*

Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEIZURE WARRANT

I, Michael Marycz, being duly sworn, depose and say as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), currently assigned to the Santa Fe Resident Agency of the Albuquerque Division, and have been so employed since 2012. I am authorized to investigate violations of Federal Criminal Law and possess the authority to execute warrants issued under the authority of the United States.

2. This affidavit is in support of an application by the United States of America for a seizure warrant for all funds contained in US Bank Account Number 1 564 0045 5234 held in the name Pueblo of Pojoaque Gaming Funds. The information set forth in this affidavit is based upon my own personal knowledge or has been communicated to me by other sworn law enforcement officers or from other reliable sources.

3. Because this affidavit is submitted for the limited purpose of securing a seizure warrant, I have not included all known facts concerning this matter. I have set forth only the facts that I believe necessary to establish probable cause to support a warrant to seize funds that constitute or are derived from proceeds of illegal gambling obtained in violation of Title 18 U.S.C. § 1955.

## **RELEVANT STATUTES**

4. This matter arises from alleged violations of 18 U.S.C. § 1955, which prohibits illegal gambling businesses. An illegal gambling business is defined by that statute as one that operates in violation of the laws of the State or political subdivision in which it is conducted, involves five or more persons, and has been in substantially continuous operation more than 30 days, or has gross revenue in excess of $2,000.00 on any single day.

5. Subsection (d) of 18 U.S.C. § 1955 provides that "any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States." The subsection goes on to provide that "all provisions of law related to … seizures … and judicial forfeiture procedures … shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of … this section…."

1

6. Funds that constitute, or are derived from, proceeds of illegal gambling obtained in violation of 18 U.S.C. § 1955 are also subject to civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7)(A) and 1961(1), which further renders them subject to seizure under 18 U.S.C. § 981(b)(1).

7. The New Mexico Gaming Control Act provides, in part, that "A person shall not conduct gaming unless the person is licensed as a gaming operator." NMSA 1978, § 60-2E-13. The New Mexico Compact Negotiation Act provides a means by which Indian Tribes may enter into gaming compacts with the State of New Mexico and thereby become licensed as gaming operators. NMSA 1978, §§11-13A-1 *et seq.*

8. State laws pertaining to the licensing, regulation and prohibition of gambling apply in Indian country in the same manner as such laws apply elsewhere in the State. 18 U.S.C. § 1166(a). The United States has exclusive jurisdiction over criminal prosecutions of State gambling laws that are made applicable to Indian country under Section 1166(a), unless an Indian tribe has consented to transfer of such criminal jurisdiction to the State. 18 U.S.C. § 1166(d).

9. The Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.* ("IGRA"), imposes a division of responsibility among the Tribal, State and federal government for the regulation of gaming on Indian land. IGRA divides gaming into three classes whereby regulatory oversight varies depending upon the type of activity. Tribes are the primary regulators of Class I gaming (traditional games). The Tribes in conjunction with the Federal government regulate Class II gaming (including bingo, electronically aided bingo, pull- tabs and player-banked poker). Class III gaming (including slot machines and house-banked table games) is allowed only if three conditions are met: (1) the governing body of the Tribe and the National Indian Gaming Commission approve an ordinance for the regulation of such gaming; (2) the state permits such gaming "for any purpose by any person, organization or entity;" and (3) the Tribe and the State have entered into a Compact that has been approved by the Secretary of the Interior, 25 U.S.C. § 2710(d)(1).

## FACTS SUPPORING PROBABLE CAUSE

10. The Pueblo of Pojoaque entered into a gaming compact with the State of New Mexico in 1997, and again in 2005. The compact entered into in 2005, which provided for revenue sharing with the State in the amount of 8% of gross gaming revenue, had an expiration date of June 30, 2015. In 2015, the State of New Mexico promulgated a new form gaming compact which, among other things, increased the amount of revenue sharing by the gaming tribes. The Pueblo of Pojoaque declined to accept the 2015 form compact, and instead sought to negotiate a new compact with the State. The Pueblo and the State were unable to agree on a new compact. Extensive litigation ensued, culminating in a lawsuit filed by the State entitled *New Mexico v. Department of the Interior, et al.*, in which the Pueblo of Pojoaque was an Intervenor. This litigation was still pending on the date the Pueblo's compact expired, namely, June 30, 2015.

11. On June 28, 2015, the Governor of the Pueblo of Pojoaque contacted then-United States Attorney Damon Martinez by letter, saying that the Pueblo planned to continue engaging in Class III gaming after the expiration of the compact, and asking the United States to put off bringing any enforcement action until the pending litigation was completed. The United States Attorney responded by letter on June 30, 2015, advising the Governor that engaging in Class III gaming without a compact would be illegal, but agreeing to forebear from bringing an enforcement action against the Pueblo during the pendency of the litigation, provided that certain conditions were met. The conditions included payment by the Pueblo of the money that would otherwise have been paid to the State of New Mexico as revenue sharing into a trust, in the care of an independent trustee, who would only be able to disburse these funds for specified purposes, including eventual distribution pursuant to a new compact or as might otherwise be determined by a court.

12. In a public statement issued on June 30, 2015, the United States Attorney explained that his purposes in agreeing to forebear from enforcement action despite the Pueblo's engagement in illegal casino-style gambling without a compact were (i) to maintain the status quo to the extent feasible, (ii) to protect the interests of all residents of the Pojoaque Valley, (iii) to shield the other gaming tribes of New Mexico from unfair competitive disadvantage, and (iv) to safeguard funds that would have gone to the State of New Mexico as revenue sharing had the expiring compact been extended.

13. The United States Attorney's public statement went on to explain that Representatives of the State had advised him that they could not accept payment of revenue sharing funds from Pojoaque Pueblo on gaming proceeds obtained after June 30 in the absence of a valid compact. The United States Attorney further explained that, in keeping with his decision to maintain the status quo during the pendency of the litigation to the extent feasible, the competitive disadvantage at which other gaming tribes would be placed if the Pueblo of Pojoaque were to conduct casino-style gaming without making revenue sharing payments would be mitigated by the Pueblo's depositing of funds that would have gone to revenue sharing into an account overseen by an independent trustee for eventual distribution pursuant to a negotiated compact or other appropriate court action, after resolution of the pending litigation.
14. Pursuant to the exchange of letters described in the paragraphs immediately above, the Pueblo of Pojoaque entered into a trust agreement with Thomas F. Gede, Esq. ("Gede") on August 24, 2015, for the creation of a trust to be called the Pueblo of Pojoaque Gaming Funds Trust, and for Gede to be the trustee. The trust agreement required Gede to provide to the Pueblo of Pojoaque and the United States Attorney for the District of New Mexico a monthly account of the trust, providing information relating to the trust property, liabilities, receipts and disbursements.
15. On or about July 1, 2015, the Pueblo began depositing funds into a trust account from gaming revenue generated on the Pueblo's lands that would otherwise have been paid to the State under the 2005 Compact. From the time of Gede's appointment as trustee, he has provided monthly reports of the trust property. The monthly reports have included monthly bank statements that, among other information, include the name of the bank at which the trust account is maintained, namely, US Bank, and the bank account number of the trust account, namely, 1 564 0045 5234. The bank statements also reflect that the name of the account is Pueblo of Pojoaque Gaming Funds.
16. On August 2, 2017, the *New Mexico v. Department of the Interior* litigation came to an end when the Tenth Circuit issued its mandate, having ruled adversely to the Pueblo and the United States. The Pueblo advised the United States Attorney that it would sign the State of New Mexico's 2015 form compact, and asked the government to continue

forebearing from bringing enforcement action for a reasonable period of time while the new compact was reviewed by the State and by the Secretary of the Interior.

17. On August 28, 2017, Acting United States Attorney James D. Tierney wrote a letter to the Governor of the Pueblo of Pojoaque, agreeing to a further extension of time until October 30, 2017, before bringing an enforcement action. In his letter, the Acting U.S. Attorney wrote as follows:

> My purpose in providing this additional window of time is to give the Pueblo and the State a reasonable opportunity to come to an agreement as to the future of Class III gaming at Pojoaque. Disposition of the funds currently held in escrow is also a relevant matter in this dispute, particularly in light of the commitment in 2015 to place funds, which would otherwise have been paid to the State of New Mexico as revenue sharing, into a trust. Please be advised that the Pueblo's Class III gaming activities may be subject to enforcement proceedings if a compact is not signed by both parties, and there is no agreement as to the disposition of the escrowed funds. by October 30, 2017.

18. Representatives of the Pueblo of Pojoaque and New Mexico Governor Susana Martinez subsequently signed the 2015 form compact, which was then submitted to the Secretary of the Interior. The new compact became effective on October 26, 2017, when notice of its being deemed approved was published in the Federal Register.

19. Although the Pueblo and the State agreed on a new compact, they did not reach any agreement as to disposition of the funds in the Trust.

20. On November 9, 2017, the Pueblo of Pojoaque filed, in the Tribal Court of the Pueblo of Pojoaque, a Verified Petition for Declaratory Judgment on Disposition of Gaming Trust Funds, seeking a declaratory judgment that all of the funds in the Pueblo of Pojoaque Gaming Funds Trust should be disbursed to the Pueblo alone, to provide for the general welfare of the Pueblo and its members, and to promote Tribal economic development. Simultaneously with filing its Verified Petition, the Pueblo filed a Motion for Summary Judgment, alleging that no facts were in dispute, and that Gede, the Trustee, did not oppose the relief sought.

21. In its Verified Petition, the Pueblo acknowledged that the funds in the Gaming Fund Trust were proceeds of its uncompacted gaming operations, and that the funds had been deposited into the Trust account as part of an agreement with the U.S. Attorney's Office

to withhold enforcement action. The Verified Complaint included the following admission:

> Since July 1, 2015, the Pueblo has been depositing into the Trust Account and Trustee has held and administered monthly payments from gaming revenue generated on the Pueblo's lands that otherwise would have been paid to the State under the 2001 Compact before July 1, 2015, and which would have been assessed by and paid to Pueblo under the Gaming Tax Ordinance after June 30, 2015. As of the date of this filing [that is, November 9, 2017], those deposits, minus applicable expenses and monthly fees incurred by and paid to Trustee, total $9,915,906.86. During that period, Trustee has been paid from the Trust Funds $92,599.32 for administration of the Trust Funds under the Trust Agreement.

22. As of Gede's most recent monthly account of the trust, dated January 16, 2018, the balance in the trust account as of December 31, 2017, was $10,139,506.76.

23. On November 13, 2017, Acting U.S. Attorney Tierney wrote a letter to representatives of the Pueblo and the State, reiterating the importance of determining the disposition of the funds in the Pojoaque Gaming Funds Trust. The Acting U.S. Attorney directed the Pueblo and the State to take notice that his decision to withhold enforcement action in this matter until October 30 had expired, and that, in the event of continued failure to reach an agreement as to the disposition of the funds, he would consider the possibility of taking further action in this matter, including assessing whether the Trust Fund monies constitute proceeds of illegal gambling obtained in violation of 18 U.S.C. $ 1955, rendering them subject to civil forfeiture.

24. The Pueblo operated its Class III gaming facilities on a substantially continuous basis at all times relevant to this Application, notwithstanding the Pueblo not having a valid gaming compact for the period July 1, 2015, until October 26, 2017.

25. Your Affiant has personally observed the operation of two gaming facilities operated by the Pueblo of Pojoaque, namely, Buffalo Thunder and Cities of Gold. Each of these is a substantial operation that involve five or more persons who conduct gambling business. Upon information and belief, the Pueblo also operates a third gaming facility, called Jake's Place.

26. All of the funds that have been deposited into the trust account constituted proceeds of illegal gambling, as they consisted of the eight percent of net win from Class III gaming

6

that took place after the Pueblo's 2005 compact expired, that would have been paid to the State as revenue sharing had the compact been extended.

27. As of the date of this Application, the Pueblo and the State still have not reached any agreement as to disposition of the funds in the Pojoaque Gaming Funds Trust.

## CONCLUSION

28. Based on the facts set forth herein, your Affiant believes that there is probable cause to seize the account identified as US Bank Account Number 1 564 0045 5234 held in the name of Pueblo of Pojoaque Gaming Funds because it contains property used in violation of 18 U.S.C. § 1955. Your Affiant also has probable cause to believe that the account funds contains funds that constituted or were derived from proceeds of illegal gambling in violation of Title 18 U.S.C. § 1955. Your Affiant further has probable cause to believe that the account is subject to seizure under Title 18 U.S.C. §§ 1955(d) and 981(b)(1), and to civil forfeiture under Title 18 U.S.C. §§ 1955(d), 981(a)(1)(C), 1956(c)(7)(A) and 1961(1).

29. Based on the fact that the account contains proceeds which are subject to rapid dissipation, it is hereby requested that Special Agents of the FBI be authorized to effect the seizure of the account, and that the Court direct US Bank to freeze the contents of the account in place and to refuse the withdrawal of any amount from the account by anyone other than the FBI, and, while any contents of the account are frozen in place, to accrue deposits, interest and dividends, until the contents of the account be fully liquidated and no contents remain.

I swear this information is true to the best of my knowledge and belief.

Respectfully submitted,

Michael Maryez
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this 8th day of February, 2018.

UNITED STATES MAGISTRATE JUDGE

Reviewed and approved by Supervisory
Assistant U.S. Attorney Jonathon Gerson

7